# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

AMY DURAN

        Plaintiff,

   vs.

CITY OF PORTERVILLE, *et al.,*

        Defendants.

_____/

Case No. 1:13-cv-00370-BAM

**ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

(Doc. 41).

     Plaintiff Amy Duran ("Plaintiff" or "Duran") filed a civil rights action against the City of Porterville, the Porterville Police Department, and Porterville Police Officers Michael Gray and Bruce Sokoloff ("Defendants") for an arrest that occurred during the officers' response to a child welfare call.  Presently before the Court is Defendants' motion for summary judgment.[1]  (Doc. 41).  On June 3, 2015, the Court deemed the matter suitable for decision without oral argument and vacated the hearing scheduled for June 5, 2015.  (Doc. 47).  Having considered the moving, opposition, reply papers, and the entire file, Defendants' Motion for Summary Judgment is DENIED in PART and GRANTED in PART.

---

[1]     The parties consented to the jurisdiction of the United States Magistrate Judge. (Doc. 28).  For that reason, the action was reassigned to the Honorable Barbara A. McAuliffe for all purposes. *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73; *see also* L.R. 301, 305. (Doc. 30).

## BACKGROUND

The following facts are not materially in dispute.[2] On January 14, 2012, Porterville Police Officers Sokoloff and Gray responded to an anonymous "check the welfare" call at Plaintiff's residence. (Doc. 41 at 6). Upon arrival, Officers claimed they detected a strong smell of natural gas coming from Plaintiff's home. (Doc. 41 at 8). While talking to the Officers, Plaintiff's speech was slurred, she admitted to consuming some amount of wine that day, and she was using her electric oven to heat her home while her 9-month old son slept in a separate room. Alleging fear that the gas stove had been leaking gas into the home, Officers Sokoloff and Gray requested fire/rescue personnel respond to the scene. (Doc. 41 at 8). Officers also opened several doors and made sure that the gas stove was turned off. (Doc. 41 at 8). When the fire department arrived, their equipment failed to detect any natural gas in the home. (Doc. 42 at 3).

That evening, Plaintiff was arrested and charged with a violation of California Penal Code § 273a(a) – felony child endangerment.[3] (Doc. 42 at 3). After her arrest, Plaintiff was transported to Sierra View District Hospital where a blood sample was obtained to determine Plaintiff's blood alcohol level. The test results established that Plaintiff had a blood alcohol content of .08%—within the legal limit. Due to her arrest, Plaintiff's minor child was removed from her care and remitted to Tulare Child Protective Services for six days. (Doc. 42 at 3). All criminal charges against Plaintiff were ultimately dismissed. (Doc. 42 at 3).

On March 14, 2013, Plaintiff commenced the instant action alleging four claims for relief: (1) unlawful arrest under § 1983; (2) municipal liability under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978); (3) violation of California Civil Code § 52.1; and (4) false imprisonment. *See* Compl., Doc. 1. (Doc. 41). Defendants move for summary judgment on Plaintiff's unlawful arrest and *Monell*

---

[2]     The facts detailed here are taken from Defendants' moving papers and Plaintiff's opposition, and construed in the light most favorable to Plaintiff. *Horphag Research Ltd. v. Garcia*, 475 F.3d 1029, 1035 (9th Cir. 2007). The Court notes that the overwhelming majority of facts are disputed by the parties. Disputed material facts are discussed in detail where relevant to the Court's analysis of a specific cause of action.

[3]     Cal Penal Code § 273a. (a) Any person who, under circumstances or conditions likely to produce great bodily harm or death, willfully causes or permits any child to suffer, or inflicts thereon unjustifiable physical pain or mental suffering, or having the care or custody of any child, willfully causes or permits the person or health of that child to be injured, or willfully causes or permits that child to be placed in a situation where his or her person or health is endangered, shall be punished by imprisonment in a county jail not exceeding one year, or in the state prison for two, four, or six years.

1   claims.  (Doc. 41).

2   **LEGAL STANDARD**

3   Summary judgment is appropriate when the pleadings, disclosure materials, discovery, and any

4   affidavits provided establish that "there is no genuine dispute as to any material fact and the movant is

5   entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that may affect

6   the outcome of the case under the applicable law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

7   248 (1986). A dispute is genuine "if the evidence is such that a reasonable trier of fact could return a

8   verdict in favor of the nonmoving party." *Id.*

9   The party seeking summary judgment "always bears the initial responsibility of informing the

10  district court of the basis for its motion, and identifying those portions of the pleadings, depositions,

11  answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes

12  demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317,

13  323 (1986) (internal quotation marks omitted). The exact nature of this responsibility, however, varies

14  depending on whether the issue on which summary judgment is sought is one in which the movant or

15  the nonmoving party carries the ultimate burden of proof. *See Soremekun v. Thrifty Payless, Inc.*, 509

16  F.3d 978, 984 (9th Cir. 2007). If the movant will have the burden of proof at trial, it must demonstrate,

17  with affirmative evidence, that "no reasonable trier of fact could find other than for the moving party."

18  *Id.* (citing *Celotex*, 477 U.S. at 323). In contrast, if the nonmoving party will have the burden of proof

19  at trial, "the movant can prevail merely by pointing out that there is an absence of evidence to support

20  the nonmoving party's case." *Id.*

21  If the movant satisfies its initial burden, the nonmoving party must go beyond the allegations in

22  its pleadings to "show a genuine issue of material fact by presenting *affirmative evidence* from which a

23  jury could find in [its] favor." *FTC v. Stefanchik*, 559 F.3d 924, 929 (9th Cir. 2009) (emphasis in

24  original). "[B]ald assertions or a mere scintilla of evidence" will not suffice in this regard. *Id.* at 929;

25  *see also Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) ("When

26  the moving party has carried its burden under Rule 56[], its opponent must do more than simply show

27  that there is some metaphysical doubt as to the material facts.") (citation omitted). "Where the record

28

as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

In resolving a summary judgment motion, "the court does not make credibility determinations or weigh conflicting evidence." *Soremekun*, 509 F.3d at 984. Instead, "[t]he evidence of the [nonmoving party] is to be believed, and all justifiable inferences are to be drawn in [its] favor." *Anderson*, 477 U.S. at 255. Inferences, however, are not drawn out of the air; the nonmoving party must produce a factual predicate from which the inference may reasonably be drawn. *See Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898 (9th Cir. 1987).

## DISCUSSION

**1.   Plaintiff's Claims for Unlawful Arrest against Officers Sokoloff and Gray**

Plaintiff asserts a Section 1983 claim for unlawful arrest against Officers Sokoloff and Gray.[4] Defendants contend that Plaintiff's claim fails because the Officers had probable cause to arrest and in the alternative, the Officers are entitled to qualified immunity. Plaintiff responds that this case is rife with genuine issues of material fact. See (Doc. 42 at 7-9).  Plaintiff maintains that whether Defendants had probable cause for her arrest is a question properly reserved for a jury.

### A.   Whether Plaintiff's Arrest Was Supported by Probable Cause

"The Fourth Amendment protects the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures. In conformity with the rule at common law, a warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed." *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004) (*citing United States v. Watson*, 423 U.S. 411, 417-424 (1976)) (internal quotations omitted). To prevail on a § 1983 claim for false arrest a plaintiff must demonstrate that there was no probable cause for the arrest. *Cabrera v. City of Huntington Park*, 159 F.3d 374, 380 (9th Cir. 1998) (per curiam).

---

[4]     Neither party makes an effort to differentiate Defendant Sokoloff's conduct from Defendant Gray's.  Accordingly, the Court addresses the Officers behavior together.

"Probable cause exists when, under the totality of the circumstances known to the arresting officers, a prudent person would have concluded that there was a fair probability that [the defendant] had committed a crime." *United States v. Buckner*, 179 F.3d 834, 837 (9th Cir. 1999) (*quoting United States v. Garza*, 980 F.2d 546, 550 (9th Cir. 1992)). Probable cause does not require overwhelmingly convincing evidence, but only "reasonably trustworthy information." *Saucier v. Katz*, 533 U.S. 194, 207 (2001).

"Probable cause is an objective standard and the officer's subjective intention in exercising his discretion to arrest is immaterial in judging whether his actions were reasonable for Fourth Amendment purposes." *John v. City of El Monte*, 505 F.3d 907, 911 (9th Cir. 2007) (*citing United States v. Lopez*, 482 F.3d 1067, 1072 (9th Cir. 2007)). "It is essential to avoid hindsight analysis, i.e., to consider additional facts that became known only after the arrest was made." *Id.* (citing *Hansen v. Black*, 885 F.2d 642, 645 (9th Cir. 1989)). In order to defeat summary judgement here, the burden is on plaintiff to prove a Fourth Amendment violation by demonstrating a lack of probable cause to arrest her. *Cabrera*, 159 F.3d at 380.

Plaintiff was arrested on a charge of violating California Penal Code § 273a(a), felony child endangerment. Felony child endangerment occurs when "a person who, under circumstances or conditions likely to produce great bodily harm or death, willfully causes or permits that child to be placed in a situation where his or her person or health is endangered." Cal. Penal Code § 273a(a). Endangerment pursuant to Penal Code section 273a, can occur in a wide variety of situations: the definition "broadly includes both active and passive conduct, i.e., child abuse by direct assault and child endangering by extreme neglect." *Gile v. County of San Bernardino*, 2005 U.S. Dist. LEXIS 45782, *19-20 (C.D. Cal. June 28, 2005); *People v. Sargent*, 19 Cal.4th 1206, 1215-16 (1999). "Two threshold elements, however, govern all types of conduct prohibited by this law: first, the conduct must be willful; second, it must be committed 'under circumstances or conditions likely to produce great bodily harm or death.'" *Id.*

Arguing that probable cause existed for Plaintiff's child endangerment arrest, Defendants claim that the Officers were responding to an anonymous call to "check the welfare" of Plaintiff and her minor son. When officers arrived and Plaintiff answered the front door, the officers immediately

detected a very strong odor of natural gas within the house. Deposition of Bruce Sokoloff ("Sokoloff Depo.") at 6:11-14, Ex. 1, Doc 41-3.  Officers entered Plaintiff's home and noticed that Plaintiff was using her electric oven to warm her kitchen, right next to the unlit stove—creating a potentially explosive enviornment.  Officers also allege that while speaking to Plaintiff her speech was slurred and she appeared very confused.  A broken wine glass was on the floor and Plaintiff, apparently unaware, repeatedly walked over the broken glass.  After speaking with Plaintiff, Officers opened several doors, made sure that the gas stove was off, retrieved Plaintiff's infant son from his bedroom, and took everyone out of the house to await the arrival of the Fire Department which had been called to ventilate the house.  Based on these circumstances, the Officers concluded that Plaintiff was unable to care for her own safety and was endangering the life of her son.  Deposition of Michael Gray ("Gray Depo.") at 28:13-25, Ex. 5, Doc 41-5.  Plaintiff was then placed under arrest for child endangerment.   Defendants argue that based on the totality of these circumstances the officers had probable cause to believe that Plaintiff's minor son was in danger.

Plaintiff's version of events wildly differs from that of Defendants. According to Plaintiff, she has a history with Officer Sokoloff, meeting him in December 2011 during an investigation for a burglary at her home. Deposition of Amy Duran ("Duran Depo.") at 57:1-15, Ex. 1, Doc 41-3.   After their initial meeting, Officer Sokoloff visited Plaintiff's apartment for coffee on several occasions. Duran Depo. at 63:8-13.   On the evening of January 14, 2012, Officer Sokoloff again visited Plaintiff's apartment.  Duran Dep. at 65:9-12.  Plaintiff heard a knock on the door and opened it to find Officer Sokoloff at her front door. Moments later, Officer Gray also arrived at her front door.  Plaintiff claims she told the Officers it was not a good time for a visit because her son was sleeping.  Duran Depo. at 70:18-25.  Plaintiff alleges that Officers Sokoloff and Gray pushed past her anyway claiming falsely that they smelled natural gas in her home.  (Doc. 42 at 2). Plaintiff told the Officers that she was using her electric oven to heat her home, but she denies that the gas stove burner was on at any time during the Officers visit.  Duran Depo. at 47:24-48; 73:21-25.  Plaintiff claims that although Defendant Officers Sokoloff and Gray falsely claimed that her residence was filled with natural gas— posing an alleged immediate danger of serious bodily injury or death due to harmful vapors or a spontaneous explosion—the Officers made no attempt to remove either Plaintiff or her minor son from

the residence for more than 10 minutes while both officers conducted a search of Plaintiff's entire residence. After completing the search, Defendant Officers Sokoloff and Gray requested fire/rescue personnel respond to the scene and when they arrived, equipment used by the fire/rescue personnel failed to detect any natural gas in the residence.  (Doc. 42 at 2). Plaintiff was later arrested and transported Sierra View District Hospital where her blood was drawn to determine her blood alcohol level. The tests results established that Plaintiff was not legally intoxicated.

Defendants attempt to defeat Plaintiff's theory that she never admitted that her gas stove was running by pointing to Plaintiff's deposition testimony. During Plaintiff's deposition, Counsel for Defendant asked Plaintiff a series of questions related to Officer Sokoloff's supplemental police report. When asked about statements allegedly made by Plaintiff and recorded in the supplemental police report, Plaintiff testified as follows:

[Q]:    "Duran said there was no excuse for leaving the gas on and she was not trying to justify it." Did you tell Officer Gray that?

[A]:    I may have said that – you know, I thought I was going to try to get released, and I'm saying," "no, I would never leave the gas on and there's no excuse for doing that." I mean, I thought I was going to get released, he was going to get my toxicology report back and I was going to get released, and I may have said that in that context, but not in, like a way of admitting that I did let the gas in any way whatsoever.

[Q]:    Listen to the statement and just tell me whether you said that.

[A]:    Okay.

[Q]:    "Duran said that there was no excuse for leaving the gas on and she was not trying to justify it."  Did you say that to him?

[A]:    Yes, but not in the context that it sounds.

[Q]:    Okay.  "I asked Duran if" – was that a true statement? "Duran said that there were no excuses for leaving the gas on and she was not trying to justify it."

[A]:    Yeah, there's no excuse for doing that.  I didn't do it.

[Q]:    "I asked Duran if she understood the danger of leaving the gas running on the stove." Do you remember Officer Duran—excuse me, Officer Gray asking you that?

7

[A]:    Yes, I think so.

[Q]:    "Duran said, "I totally understand." Did you say that to him?

[A]:    Yes, I did, 'cause I was saying that is very dangerous, I agree with you, but I did not do that.'

Duran Depo. at 121-122.

According to Defendants, Plaintiff has not and cannot deny this sworn testimony in which she admitted to telling officers that she left her gas stove on an unlit burner.  Duran Depo. at 121.

As discussed above, the parties present starkly different accounts as to what took place on the day of Plaintiff's arrest, in arguing probable cause existed to make the arrest the Officers relied on the following evidence: (1) an anonymous call was made to the Porterville Police Department requesting that officers perform a welfare check at Plaintiff's home; (2) upon arrival, the officers claims they smelled what they believed was natural gas coming from Plaintiff's gas stove; (3) Plaintiff admitted to drinking wine that day, her speech was slurred, and she had little sleep over the previous three days; (4) the officers identified that Plaintiff was using her electric stove to heat her home; (5) based on a fear of excess amounts of natural gas emanating in the home, the fire department was dispatched to perform a proper ventilation; (6) Plaintiff and her minor son were removed from the home while the ventilation occurred.

Plaintiff responds, however, that the issue of probable cause is disputed because the information known to the police officers at the time of her arrest is insufficient as a matter of law to rise to the level of probable cause to arrest. First, Plaintiff contends that she never told Officers that she left her gas stove on.  According to Plaintiff, she was preheating her electric oven and left the door ajar to warm her kitchen. Duran Depo. at 73:21-23.  Plaintiff denies that her unlit gas stove was running when the Officers arrived.  Duran Depo. at 74:16-22.  Plaintiff did not smell any gas and when the fire department arrived no natural gas was detected.  During her deposition, Plaintiff claims that she never admitted to telling officers that she left the stove running, merely that she agreed with their contention that an unlit gas stove is indeed dangerous.  Duran Depo at 122:9-12.  Plaintiff asserts that the officers fabricated claims that her home was filled with natural gas as a ruse to enter her home and perform an illegal search. (Doc. 42 at 3).  Further, Plaintiff admits that although she had some

8

wine, she was not intoxicated and her lack of sleep over the three previous days is attributable to the realities of raising a newborn as a single mother. Duran Depo. at 113:22-114:23.

Viewing the evidence in the light most favorable to Plaintiff, there is a genuine issue of material fact precluding summary judgment. Specifically, the parties' dispute whether there was the presence of natural gas in Plaintiff's home or whether officers knew that Plaintiff's gas stove was off and are lying about having observed otherwise. This dispute is material to probable cause in this instance because the presence of natural gas in the home is essential to Defendants' theory of arrest— that Plaintiff willfully created "conditions likely to produce great bodily harm or death" of Plaintiff's minor son. Cal. Penal. Code § 273a(a). Setting aside the disputed testimony as to whether the gas stove was on demonstrates that there is no independent basis to determine that Plaintiff's minor child was in imminent danger. Defendants acknowledge this fact in their brief, conceding that:

> Although there was certainly nothing illegal about Plaintiff being under the influence of alcohol/drugs in her own home, it was blatantly obvious to Officer Gray that Plaintiff's reckless actions placed herself, her infant son and her entire neighborhood at extreme risk of serious injury or death.

(Doc. 41 at 9).

Ultimately, if there was a presence of natural gas in the home creating a potentially explosive or toxic environment for Plaintiff's minor child, then Defendants had probable cause to arrest Plaintiff; if the officers are lying about having smelled gas in Plaintiff's home, Defendants did not have probable cause for the arrest as there were no other objectively endangering factors present.

Further, contrary to Defendants' arguments, Plaintiff's deposition testimony does not clearly establish that she admitted to leaving her gas stove running. Plaintiff's deposition lends itself to two competing inferences. One inference is that Plaintiff apologetically admitted to officers that it was wrong to leave her gas stove running. In the alternative, an inference can be drawn that Plaintiff simply agreed with officers that a running gas stove would create a dangerous environment. This inference is supported by Plaintiff's contention that there was some confusion regarding which kitchen appliance was running. While Plaintiff readily admits to preheating her electric oven, during her deposition, Plaintiff denies that she left her gas stove running. Duran Depo. at 74:16-19. As addressed above, if the Officers were mistaken as to whether Plaintiff's gas stove was running, then

Officers did not have probable cause to arrest Plaintiff.

On a motion for summary judgment, the Court must draw the inference that is most favorable to the non-moving party, here Plaintiff. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Here, the conflicting accounts offered by each party leaves the Court with a classic he-said-she-said scenario. It must be left to a jury to determine which portions of which witnesses' testimony to accept. *Id.* ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge."). As a result, the Court concludes that genuine disputes of fact exist as to whether the Officers had probable cause to arrest Plaintiff. *See also Nelson v. City of Davis*, 571 F.3d 924, 929 (9th Cir. 2009) ("A judge must not grant summary judgment based on his determination that one set of facts is more believable than another."); *Espinosa v. City & County of San Francisco*, 598 F.3d 528, 537 (9th Cir. 2010) ("Finally, this court has often held that in police misconduct cases, summary judgment should be granted only 'sparingly' because such cases often turn on credibility determinations by a jury.").

## B. Qualified Immunity

Defendants argue in the alternative that they are entitled to qualified immunity because, even if the Officers were mistaken in their belief that the gas leak coupled with Plaintiff's behavior established probable cause, "[a] reasonable peace officer could believe his conduct was lawful" under the facts of this case, and thus their mistake of law was a reasonable one. (Doc. 41 at 13). *See Jeffers v. Gomez*, 267 F.3d 895 (9th Cir. 2009); *Skoog v. County of Clackmas*, 469 F.3d 1221, 1229 (9th Cir. 2006). As previously discussed, however, Plaintiff sets forth evidence creating a genuine factual dispute as to what information Officers Sokoloff and Gray had at the time of the arrest, and this factual dispute is also "material to a proper determination of the reasonableness of the officers' belief in the legality of their actions." *Espinosa*, 598 F.3d at 532. The problem with Defendants' argument that qualified immunity applies is that it assumes Defendants' account of the facts is accurate. Defendants argue they reasonably believed Plaintiff's minor son was in danger because Plaintiff was intoxicated while high levels of natural gas permeated her home. The Court cannot credit that account for qualified immunity purposes because it is inconsistent with the account provided by Plaintiff. Plaintiff's account as depicted through her deposition testimony and opposition, offers a theory of

pretext as a means for entering her home for a search.[5]  Plaintiff further suggests that probable cause for her arrest was effected in part through the fabrication of false evidence—that she left her unlit gas stove running.

In determining on a motion for summary judgment whether an officer is entitled to qualified immunity, the Court must resolve all factual disputes in the nonmoving party's favor. *See Bardzik v. Cnty. of Orange*, 635 F.3d 1138, 1144 (9th Cir. 2011). Believing Plaintiff's evidence that she never left her gas stove on when the officers observed otherwise, and that their reason was mere pretext to perform an illegal search, there is a triable issue as to whether Plaintiff's arrest was effectuated without probable cause.  Accordingly, Defendants are not entitled to qualified immunity on the ground that their actions did not amount to a constitutional deprivation.

Defendants' motion for summary judgment on Plaintiff's unlawful arrest claim is therefore DENIED.

## 2. Monell Liability against the City of Porterville and the Porterville Police Department[6]

Defendants move for summary judgment on Plaintiff's *Monell* claim against the City of Porterville on the grounds that Plaintiff's claim rests exclusively on the principals of respondeat superior. Plaintiff opposes the motion arguing, in totality, that "there are jury issues that preclude summary judgment as to Officers Gray and Sokoloff."

Under *Monell*, a local governmental entity may be liable for failing to act to preserve constitutional rights under section 1983 where the plaintiff can establish: "(1) that he possessed a constitutional right of which he was deprived; (2) that the municipality had a policy; (3) that this policy 'amounts to deliberate indifference' to the Plaintiff's constitutional right; and (4) that the policy

---

[5]  Plaintiff testified at her deposition that after officers knocked on her door, she answered and told them "now was not a good time.  My son is sleeping."  Duran Depo. at 50:4-6. Officers insisted that she allow them inside, and it was not until Plaintiff asked to see a warrant that officers began fabricating the story about smelling gas in her home.  Duran Depo at 51:1-4.  Plaintiff testified that Officer Gray looked at Officer Sokoloff and said "'I think I smell gas,' and he laughed and kind of elbowed Officer Sokoloff , like 'do you smell gas?'" And then he—and then Officer Gray just barged his way in." Duran Depo at 65:9-16.

[6]  Plaintiff has named both the City of Porterville and the Porterville Police Department as defendants. The Porterville Police Department is not a proper party as it is a department of the City; not a separate municipal agency. *See Sanders v. Aranas*, 2008 WL 268972 (E.D.Cal., January 29, 2008); *Vance v. County of Santa Clara*, 928 F.Supp. 993, 996 (N.D. Cal. 1996).

is the 'moving force behind the constitutional violation.'" *Oviatt By & Through Waugh v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992) (*citing City of Canton v. Geraldine Harris*, 489 U.S. 378, 389-91 (1989)). A single occurrence of unconstitutional action by a non-policymaking employee is insufficient to establish the existence of an actionable municipal policy or custom. *See Davis v. City of Ellensburg*, 869 F.2d 1230, 1233-34 (9th Cir. 1989). "Only if a plaintiff shows that his injury resulted from a 'permanent and well settled' practice may liability attach for injury resulting from a local government custom." *Thompson v. City of Los Angeles*, 885 F.2d 1439, 1444 (9th Cir. 1989).

With respect to Plaintiff's *Monell* claims, it is Plaintiff's burden to demonstrate an unconstitutional policy, practice or custom promulgated or endorsed by the City of Porterville or the Porterville Police Department.  Here, Plaintiff has failed to identify a specific governmental policy or custom on which *Monell* liability might be premised. Plaintiff fails to put forth any evidence to establish that the City of Porterville had a policy amounting to the deliberate indifference to Plaintiff's constitutional rights, or that the policy was the driving force behind the alleged constitutional violations.  There are no genuine issues of material fact regarding Plaintiff's *Monell* claim. Accordingly, the Court GRANTS Defendants' motion for summary judgment on the *Monell* claim.

## CONCLUSION AND ORDER

For the reasons set forth above, Defendants' Motion for Summary Judgement (Doc. 41) is **GRANTED in PART** and **DENIED in PART.**  Accordingly, **IT IS HEREBY ORDERED** that the motion is:

1.    DENIED as to Plaintiff's first claim for relief against individual defendants Officer Bruce Sokoloff and Officer Michael Gray for unlawful arrest under Section 1983; and

2.    GRANTED as to Plaintiff's second claim for relief against the City of Porterville and the Porterville Police Department alleging municipal liability under *Monell*.

IT IS SO ORDERED.

Dated:   **June 17, 2015**              /s/ *Barbara A. McAuliffe*
                                              UNITED STATES MAGISTRATE JUDGE

12